APR 28 2025 AM 10:45
FILED - USDC - BPT - CT

UNITED STATES DISTRICT COURT, DISTRICT OF CONNECTICUT

_____

Julia Greenberg

                                                    Plaintiff                          Case #:


      -against-

USA; Federal Bureau of Prisons; former Warden Richard Stover,
Carey Carey Zimmermann; Former or current camp administrator Ms. Moore (
first name is unknown at this time).

                                                    Defendants.


_____


### COMPLAINT FOR DAMAGES

### I.    Introduction


1.  Plaintiff, Julia Greenberg, brings this action for damages resulting from her unlawful and extended imprisonment in violation of her constitutional rights and the Federal Tort Claims Act, stemming from the Federal Bureau of Prisons' (BOP) acknowledged misclassification error and their willful failure to correct it in time—despite Plaintiff filing administrative relief forms prior to her lawful release date.
2.  Plaintiff was released 10 days later than lawfully required, not due to any ambiguity in the law or her conduct, but solely because of the BOP's internal mismanagement, dysfunction, and a culture of indifference—where staff made conflicting promises, avoided responsibility, and refused to coordinate, allowing a simple, easily fixable administrative error to go uncorrected. Despite acknowledging the mistake, officials failed to act out of negligence, incompetence, and a pervasive attitude of superiority and disregard toward inmates' rights and time, ultimately causing an unlawful extension of Plaintiff's imprisonment.
3.  Plaintiff is a mother of three children who waited for her return nearly every day, holding on to her assurances—assurances based on promises made by prison officials who failed to act. The emotional harm caused by this unnecessary and unlawful delay cannot be measured in monetary terms. This experience reflects the devastating human impact of bureaucratic negligence within federal prisons and underscores the urgent need for meaningful government accountability to ensure such failures never happen again.

## II. Jurisdiction and Venue

4. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1346(b), and 1367.

5. Venue is proper under 28 U.S.C. § 1391(b) because the events occurred at FCI Danbury, located in the District of Connecticut.

## III. Parties

5. Plaintiff is a U.S. citizen and was incarcerated at FCI Danbury from October 30, 2023 to January 17, 2024.

6. Defendant United States of America is sued under the FTCA for the tortious conduct of BOP employees acting within the scope of employment.

7. Defendants Stover, Zimmermannn, and Moore are sued in their individual capacities under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) for violating clearly established statutory or constitutional rights of which a reasonable person would have known.

## II. Statement of Facts

8. Plaintiff, Julia Greenberg, self-surrendered to FCI Danbury on October 30, 2023, to serve a short 90-day federal sentence. From the outset, she encountered a facility governed not by structure, discipline, or professionalism—but by dysfunction, miscommunication, and disturbing indifference toward the rights and dignity of inmates. The BOP's own policies, especially those governing the First Step Act (FSA), were not only ignored but actively undermined by staff who were either poorly trained, willfully careless, or completely unaccountable.

9. Upon arrival, Plaintiff received no orientation explaining the First Step Act or the required SPARC-13 survey. Approximately a month into her sentence, she was given a generic Admission and Orientation handbook, which contained no mention of the SPARC-13 survey or First Step Act programming requirements. Instead, Plaintiff learned of the survey's existence informally from other inmates.

10. On November 5, 2023, Plaintiff accessed a BOP computer, located the survey button, and completed the SPARC-13 and related assessments truthfully. Many of the questions involved experiences with violence, crime, or substance abuse, which did not apply to Plaintiff. Accordingly, she selected "N/A" or "No Response" where appropriate. Upon submission, the system confirmed that all surveys were successfully completed. No warning or disclaimer indicated that such responses would be treated as a refusal to participate.

11. Plaintiff's Risk Level and Needs Assessment meeting took place on November 16, 2023. She was classified as minimum risk based on her PATTERN score, which was three points below zero for both general and violent risk. Case Manager Mr. Ramos told

Plaintiff she should expect her First Step Act Time Credits (ETCs) to post in December. The refusal status was not discussed.

12. Later that day, Plaintiff reviewed her paperwork and saw that her FSA programming list incorrectly indicated she had refused assignments in areas like Anger, Antisocial, Cognition, and Parenting. She brought this to Mr. Ramos's attention, who confirmed this was a common error caused by the survey software—that selecting "N/A" or "No Response" triggers a system-wide refusal status. He assured her the issue could be easily fixed by emailing the Psychology Department.

13. Plaintiff immediately emailed Psychology and received a response from Dr. Bukowski acknowledging that the system had incorrectly placed her in refusal status even though she had not actually refused participation. Dr. Bukowski stated that Plaintiff could retake the survey and provide different answers to correct the system's classification. No assistance or instructions were offered for how to do so.

14. On November 17, 2023, Mr. Ramos asked Plaintiff to identify other inmates who had experienced the same problem. She did so, and he then distributed a paper version of the survey that lacked an "N/A" option. Plaintiff and others completed the paper version and returned it, expecting the refusal code to be removed.

15. On November 18, 2023, Plaintiff met with Camp Administrator Ms. Moore to escalate the matter. Ms. Moore admitted the issue was widespread and beyond her power to fix, but promised that once the survey was "manually fixed," Plaintiff would receive all applicable credits. She said, "Don't worry, you are receiving all your credits and when you fix the survey they will apply to your account."

16. In December 2023, Plaintiff followed up with Mr. Ramos repeatedly. He reassured her the issue had been resolved on November 17 and that November credits would appear by the end of the month. As her 90-day sentence neared its end, she grew increasingly concerned that administrative delays would prevent correction in time.

17. On December 31, 2023, Plaintiff's ETCs were posted: 10 days credited for December, but none for November. On January 2, 2024, she again approached Mr. Ramos, who appeared alarmed to discover that the original survey completion date had been erased from the BOP system and replaced with November 21—a date that delayed her credit eligibility by 22 days.

18. Mr. Ramos again promised to email those responsible. Plaintiff also emailed Ms. Moore and Warden Stover, but received no responses. On January 3, 2024, Mr. Ramos informed Plaintiff that the error could not be fixed. He said that Ms. Zimmermann, the staff member responsible for data entry, refused to change the date back because she believed inmates "should know" not to select "N/A."

19. That same day, Ms. Moore emailed Plaintiff stating she had not fully completed the survey on November 5, and this was the reason for her refusal classification. This statement contradicted both Mr. Ramos' records and Ms. Moore's earlier assurances. No one reviewed her answers, and no due process was offered before applying a classification that blocked her early release.

20. Plaintiff began filing administrative remedies, starting with a Form 8 on January 3, 2024. She was informed it would be denied around January 10. Given her projected release date of January 8 if credits had been applied, the remedy process was moot.

21. Faced with official inaction, Plaintiff, who fortunately had legal training, drafted and filed a pro se Habeas Corpus Petition under 28 U.S.C. § 2241. The District Court ordered a response. On the day the response was due—January 17, 2024—the BOP released Plaintiff without explanation or judicial ruling.

22. By that time, Plaintiff had already served ten extra days in custody. Her three young children, awaiting her return based on staff assurances, were forced to endure continued separation. Plaintiff suffered emotional harm, uncertainty, and fear during this unlawful detention. The BOP had ample time to resolve the issue but failed to act.

23. Ironically, Plaintiff's conviction stemmed from failing to exercise sufficient diligence as an immigration attorney while representing undercover FBI informants posing as asylum clients. She was prosecuted for not identifying portions of fabricated applications that the government maintained, and the jury agreed, should have been obvious. For that professional lapse, she served time.

24. Yet within FCI Danbury, she encountered government employees entrusted with liberty who disregarded policy, gave false assurances, refused to act, and extended her incarceration unlawfully. Unlike Plaintiff, these officials were not under pressure or in morally or ethical complex scenarios. Their responsibilities were simple: apply existing rules and treat inmates with fairness, do not violate the Constitution.

25. Instead, they acted with apathy, incompetence, dishonesty, and a sense of untouchability. Their behavior—allowing known system errors to persist, misleading inmates, ignoring time-sensitive legal obligations—reflects a dangerous culture of impunity.

26. This was not a one-time oversight. It was a systemic failure, compounded daily by shifting blame, internal miscommunication, and deliberate neglect and willful actions. And while the additional ten days of incarceration are quantifiable, the moral, emotional, and constitutional damage to Plaintiff and her children is immeasurable.

### III. Claims for Relief

### COUNT I – Federal Tort Claims Act (FTCA) – Negligent Miscalculation and False Imprisonment

27. Defendants, through negligent execution of sentence calculations, failed to apply earned time credits in accordance with federal law and BOP policy.

28. This caused Plaintiff to be unlawfully imprisoned from **January 8 to January 17, 2024**.

29. Plaintiff filed an **administrative claim** with the BOP on May 11, 2024. The claim was denied on November 1st, 2024.

### COUNT II – Violation of Fourth and Fifth Amendments (Bivens Action)

18. By failing to inform Plaintiff of her classification status, refusing to correct known errors, and knowingly extending her false detention, Defendants **Stover, Ramos, Moore, and**

**Zimmermann** deprived her of liberty **without due process of law**.

19. Plaintiff was denied a meaningful opportunity to challenge the "refusal" code that led to her extended incarceration.

20. Defendants, acting under color of federal law, unlawfully detained Plaintiff without legal justification beyond her lawful release date, constituting an unreasonable seizure in violation of the Fourth Amendment.

### III. Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that this Court:

21. Enter judgment in favor of Plaintiff and against Defendants, jointly and severally;
22. Award compensatory damages in the amount of **Seventy Thousand Dollars ($70,000.00)** for the ten days of unlawful incarceration.
23. Declare that Defendants' actions violated Plaintiff's constitutional rights under the Fifth Amendment, and applicable provisions of the First Step Act and Federal Tort Claims Act;
24. Grant such other and further relief as the Court deems just, proper, and equitable under the circumstances.

Dated: April 26, 2025

_____

Julia Greenberg, *pro se*

